UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AMANDO VILLARREAL HEREDIA (1),<br><br>Defendant. | Case No.: 10cr3044-WQH-1<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion for Modification of Term of Imprisonment pursuant 18 U.S.C. § 3582(c)(1)(A), filed by Defendant Amando Villarreal Heredia. (ECF No. 2663.)

**BACKGROUND**

On July 29, 2010, a grand jury returned an Indictment charging Defendant Armando Villareal-Heredia and 42 codefendants with participating in a conspiracy to conduct enterprise affairs through a pattern of racketeering activity ("RICO conspiracy") in violation of 18 U.S.C. § 1962(d). (ECF No. 82.)

On April 28, 2011, the grand jury returned a Superseding Indictment and added a charge of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 and 841(a)(l) in addition to the RICO conspiracy offense. (ECF No. 644.)

On September 27, 2013, Defendant pled guilty to RICO conspiracy in violation of 18 U.S.C. § 1962(d) and conspiring to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), 841 (b)(1)(A)(ii), (vii), (viii), and 846. (ECF No. 2041.)

On December 16, 2013, this Court conducted a sentencing hearing. (ECF No. 2068.) At sentencing the Court determined Defendant qualified for an aggravated role adjustment. (ECF No. 2177 at 13.) The Court stated:

> Under the 3553 factors, the nature and circumstances of the offense are aggravated. It is really hard to come up with a situation, a drug case, that can be more aggravated than this one. Certainly this is a gentleman whose role was significant. He was a leader or organizer. He … clearly qualifies for an aggravated role.
>
> In addition to significant amounts of dangerous narcotics, the defendant was involved in a conspiracy to commit murder. It is hard to imagine what is worse than using violence to engage and further the activities of a significant drug trafficking organization.
>
> It does appear certainly from the presentence report that this is an individual who's been involved in the drug business for an extended period of time. He's approximately 35 years of age. There is really not even a real suggestion in the presentence report that he's been involved in any legal employment, other than the drug business -- any legal employment at all, really in his life.
>
> And it does appear that his life really had been dedicated to furthering the activities of this drug conspiracy or others. He's been involved in it basically, it looks like, his whole life, and it has been a significant amount of drugs have been distributed, and they've used threats of violence and actual violence in order to further the ends of the drug trafficking organization.
>
> So it is hard to come up with anything that is a case that would be more aggravated than this, and certainly this – Mr. Heredia's role is a significant one, and that is why he qualifies for the aggravated role adjustment ..., he is here because of his participation in a massive drug conspiracy that was violent.
>
> The need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, as the parties have indicated -- both lawyers have indicated that they have -- they are recommending a

sentence of 360 months in custody, which is a significant sentence by anybody's definition. It is a recommendation that I'll follow. I think it is a reasonable one.

*Id*. at 13-14. The Court sentenced Defendant to the custody of the Bureau of Prisons ("BOP") for a term of 360 months as to each count to be served concurrently, followed by 5 years supervised release as to each count to be served concurrently. *Id*. at 18.

On July 30, 2020, Defendant filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) requesting a sentence reduction based upon the contention that the Covid-19 pandemic presented a compelling reason to reduce his sentence in light of his "hypertension and heart disease issues." (ECF No. 2484 at 22.)

On October 2, 2020, the Court denied Defendant's motion for compassionate release stating: "Defendant does not present evidence to support a medical condition or other circumstance that would serve as 'extraordinary and compelling reasons' for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). Defendant has failed to demonstrate factors set forth in 18 U.S.C. § 3553(a) that would support a reduction in the sentence imposed taking into account the seriousness of his offense." (ECF No. 2506 at 6.)

On November 10, 2020, Defendant filed a motion for reconsideration of the denial of his motion for compassionate relief. (ECF No. 2508.) Defendant contended that his "high blood pressure and hypertension" support his motion for compassionate relief in light of Covid-19 and his "open dormitory" living environment. *Id*. at 6.

On January 11, 2021, this Court denied Defendant's motion for reconsideration, stating in part: "Chronic conditions, such as obesity and hypertension, that can be managed in prison are not a sufficient basis for compassionate release. There is no evidence to demonstrate that Defendant is not able to receive adequate treatment for his chronic conditions." (ECF No. 2517 at 5.)

On January 19, 2021, Defendant filed another motion for reconsideration of the denial of the motion for compassionate release. (ECF No. 2522.)

On January 25, 2021, the Court denied Defendant's second motion for reconsideration, stating: "The Court finds that there are no grounds to reconsider the ruling that Defendant does not present evidence to support a medical condition or other circumstance that would serve as 'extraordinary and compelling reasons' for a sentence reduction under § 3582(c)(1)(A)(i)." (ECF No. 2535 at 3.)

Defendant filed a notice of appeal of the Court's denials of the motions for compassionate release and motions for reconsideration. (ECF No. 2524.)

On July 21, 2021, the Court of Appeals for the Ninth Circuit issued a Mandate "summarily affirm[ing] the district court's order denying appellant's motion for compassionate release and other equitable relief under 18 U.S.C. § 3582(c)(1)(A)(i)," and stating that "[t]he district court did not abuse its discretion by concluding that the 18 U.S.C. § 3553(a) sentencing factors did not support compassionate release." (ECF No. 2562 at 2 (citing 18 U.S.C. § 3582(c)(1)(A)).)

On December 6, 2021, Defendant again filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), contending that his underlying health conditions made his more susceptible to contracting Covid-19 in custody, his mother was ailing, and his rehabilitation had been extraordinary. (ECF No. 2581.)

On February 28, 2022, the Court denied Defendant's motion for compassionate release without prejudice because Defendant had not demonstrated that the administrative exhaustion requirement of § 3852(c)(1)(A) had been met. (ECF No. 2593 at 4.)

On January 21, 2025, Defendant, proceeding pro se,[1] filed the pending Motion for Modification of Term of Imprisonment pursuant 18 U.S.C. § 3582(c)(1)(A). (ECF No.

---

[1] Federal Defenders of San Diego, Inc. ("Federal Defenders") entered an appearance of Defendant's behalf pursuant to General Order 692-B. (ECF No. 2669.) However, Defendant then filed a Notice of Invocation of Pro Se Status, stating that the appointment of an attorney to represent him was "contrary to [Defendant's] clearly expressed desire to pursue relief under § 3582 pro se," and requesting that "counsel tak[e] no action on said motion and immediately withdraw[] from the case." (ECF No. 2676.) Federal Defenders has filed no documents on Defendant's behalf and the Court considers Defendant to be proceeding pro se.

2663.) Defendant states that he "is currently suffering from a debilitat[ing] medical condition—having been diagnosed with morbid obesity, hypertension, a ventral hernia with the FBOP refuses to repair (a previous hernia repair surgery failed), and other medical issues." *Id*. at 6. Defendant states that he is "eligible for halfway house placement in as little as five to seven years" and he "would pose no danger to any person" if released. *Id*. at 7. Specifically, Defendant contends that his "minor criminal history," his current age of 46 years old, his role as a leader or organizer in the underlying offense, and his "strong commitment to rehabilitation" and participation in BOP programs combine to "strongly indicate[] that he will not be likely to recidivate." (ECF No. 2663-1 at 16–19.)

Defendant also filed a Motion to Expand the Record with exhibits containing medical records.[2] (ECF No. 2668.) The Motion to Expand the Record is granted, and the Court will consider these exhibits in deciding the pending Motion for Modification of Term of Imprisonment pursuant 18 U.S.C. § 3582(c)(1)(A).

The Government filed a Response in opposition to the Motion for Modification of Term of Imprisonment pursuant 18 U.S.C. § 3582(c)(1)(A). (ECF No. 2675.) The Government contends that the Court should deny the motion because "Defendant does not have 'a serious physical or medical condition' within the meaning of the Sentencing Commission's policy statement," and "the 18 U.S.C. § 3553(a) factors counsel against release because he poses a danger to the public and the statutory sentencing factors do not weigh in favor of his early release." *Id*. at 1–2.

Defendant filed a reply brief contending that "[p]ain medication, compression socks and Ozempic have not remedied [Defendant]'s debilitat[ing] medical condition as described in his motion and supporting papers." (ECF No. 2683 at 3.) Defendant contends that "the relevant § 3553(a) factors actually strongly support" his immediate release from

---

[2] The Court previously ordered these exhibits containing medical records to be filed under seal. (*See* ECF No. 2667.)

custody because of his "stellar record of post-offense rehabilitation" and "he is statistically unlikely to recidivate." *Id*. at 4–5.

## RULING OF THE COURT

"Our justice system relies on the finality of criminal judgments. Once imposed, a sentence may be altered 'only in very limited circumstances.'" *United States v. Bryant*, 144 F.4th 1119, 1123 (9th Cir. 2025) (quoting *Pepper v. United States*, 562 U.S. 476, 501–02 n.14 (2011); citing *Teague v. Lane*, 489 U.S. 288, 309 (1989)). "With 18 U.S.C. § 3582(c)(1)(A), Congress provided one such 'narrow' exception—sometimes called compassionate release—for when 'extraordinary and compelling reasons' warrant reducing a defendant's sentence." *Id*. (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)). "As compassionate release derogates from the principle of finality, it is a narrow remedy, and the court's disposition of a compassionate release motion is discretionary, not mandatory." *United States v. Wright*, 46 F.4th 938, 944–45 (9th Cir. 2022) (quotations omitted).

"The First Step Act grants courts the discretion to consider compassionate release motions on an individualized basis," although "the exercise of this discretion is controlled by three substantive considerations." *Id*. at 945 (citations omitted). "First, the district court must find that 'extraordinary and compelling reasons' warrant a sentence reduction." *Bryant*, 144 F.4th at 1123 (quoting 18 U.S.C. § 3582(c)(1)(A)). "Second, the reduction must be 'consistent with applicable policy statements issued by the Sentencing Commission.'" *Id*. (quoting 18 U.S.C. § 3582(c)(1)(A)). "Third, the district court must consider the sentencing factors in 18 U.S.C. § 3553(a)—including the nature of the offense and the defendant's characteristics—to determine 'whether the requested sentence reduction is warranted under the particular circumstances of the case.'" *Id*. (quoting *Wright*, 46 F.4th at 945; citing *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007)).[3] "Although a

---

[3] These factors include, among other things: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide

district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds." *Wright*, 46 F.4th at 945 (citation omitted). "[I]t [i]s [defendant]'s burden to establish his eligibility for compassionate release…." *Id*. at 951.

Section 1B1.13 of the Sentencing Guidelines states in relevant part:

> Upon motion …, the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after consideration of the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction. . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13; *see also Bryant*, 144 F.4th at 1124 ("[C]ourts are bound by § 1B1.13 in deciding all compassionate release motions under § 3582(c)(1)(A).") (quotation omitted). Section 1B1.13 lists circumstances that qualify as "extraordinary and compelling reasons."

Here, Defendant relies upon the two provisions in § 1B1.13 related to "Medical Circumstances of the Defendant." U.S.S.G. § 1B1.13(b)(1). The first "Medical Circumstances" provision relied upon by Defendant states that "[e]xtraordinary and compelling reasons exist" when "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. §

---

just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable sentence guidelines; and (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants. 18 U.S.C. § 3553(a*); see also Wright*, 46 F.4th at 945 n.4.

1B1.13(b)(1)(C). Based upon the medical records Defendant submitted and the Government's assertions in its response, BOP medical records show that Defendant is a 46-year-old male who has a diagnosis of morbid obesity, and a history of hypertension, Gastro-esophageal reflux disease, and a recurrent ventral hernia. Defendant has been proscribed and been treated with a weekly Semaglutide injection (i.e., Ozempic) since July 2024 to treat his obesity. Defendant is seen by BOP's chronic care clinic where has been provided with counseling to assist Defendant with his exercise and diet to support his weight loss. Defendant has been prescribed compression stockings and pain medication for chronic knee and ankle pain associated with his obesity. The Government asserts—and Defendant does not dispute—that, "[b]ased on these medical records, Defendant appears to be fully ambulatory and engages in all normal activities of daily living." (ECF No. 2675 at 20.) Defendant also has been proscribed multiple medications to treat hypertension, including amlodipine, Atenolol, and Lisinopril. The BOP chronic care clinic regularly assesses Defendant's blood pressure and provides him with counseling. BOP records show that Defendant saw a general surgeon who evaluated the ventral hernia and recommended a 50-pound weight loss before scheduling a hernia repair surgery, because without the weight loss Defendant's obesity would make any surgery to repair the hernia ineffective. In short, it appears that BOP is actively monitoring and treating Defendant's chronic conditions. Defendant has failed to satisfy his burden that he "is suffering from a medical condition that requires long-term or specialized medical care *that is not being provided*" by BOP. U.S.S.G. § 1B1.13(b)(1)(C) (emphasis added).

Defendant also relies on U.S.S.G. § 1B1.13(b)(1)(D), which states that "[e]xtraordinary and compelling reasons exist" when:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or

> death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D). Defendant contends that he satisfies this provision based upon the Covid-19 pandemic and his medical conditions described above. To the extent that Covid-19 still qualifies as "an ongoing outbreak of infectious disease" or "an ongoing public health emergency," the Government asserts that "Defendant received the COVID-19 vaccine while in BOP custody, and then received the necessary booster shot in November 2023," and "Defendant has already survived a COVID-19 infection." (ECF No. 2675 at 20, 21.) Defendant does not dispute these assertions, nor does he contend that additional Covid-19 booster shots would be available to him in custody if he desires. Based upon the current record, the Court finds that Defendant has failed to demonstrate that he "is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency" and that "such risk cannot be adequately mitigated in a timely manner." U.S.S.G. § 1B1.13(b)(1)(D).

Defendant also relies upon the narrow catch-all provision of § 1B1.13(b), which states that "[e]xtraordinary and compelling reasons exist" when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in [prior] paragraphs …, are similar in gravity to those described in [prior] paragraphs…." U.S.S.G. § 1B1.13(b)(5); *see Bryant*, 144 F.4th at 1126 ("Subsection (b)(5) is narrow."). The Court considers Defendant's medical conditions in combination with the other factors outlined in his motion, such as his limited prior criminal history, his age, his participation in BOP programs, and that it "has been roughly four years since [Defendant] has been subject to an incident report for violating any []BOP rule." (ECF No. 2663-1 at 19.) Defendant's criminal history and age were considered by the Court at sentencing. *Cf. Bryant*, 144 F.4th

at 1127 ("[T]he statutory scheme envisions extraordinary and compelling reasons as post-sentencing changes to a defendant's personal circumstances."). Defendant's assertion that he has successfully participated in BOP programs and not been disciplined in prison for four years, while commendable, is not "similar in gravity" to the circumstances set out in Section 1B1.13(b) paragraphs (1) through (4), even when considered in combination with his medical circumstances. The Court finds that Defendant has failed to demonstrate that extraordinary and compelling reasons warrant a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

The Court also considers and weighs "the factors set forth in 18 U.S.C. § 3553(a) to decide whether the requested sentence reduction is warranted under the particular circumstances of the case." *Wright*, 46 F.4th at 945; *see* 18 U.S.C. § 3582(c)(1)(A). As set forth in the Plea Agreement, Defendant agreed that he acted "as an organizer and leader" in both offenses. (ECF No. 2041 at 7.) As the Court stated at sentencing, Defendant's offenses considered under the § 3553(a) factors are aggravated in nature, including being an organizer or leader in a conspiracy that involved trafficking significant amounts of dangerous narcotics and conspiracy to commit murder. (ECF No. 2177 at 12–13.) As the Court stated at sentencing, "It is really hard to come up with a situation, a drug case, that can be more aggravated than this one." *Id*. at 12. The Court considered Defendant's history and characteristics, as set forth in the Presentence Investigation Report, which suggested that Defendant dedicated his whole life "to furthering the activities of this drug conspiracy or others" that involved "threats of violence and actual violence in order to further the ends of the drug trafficking organization." *Id*. at 13. For these reasons and others stated at sentencing, the Court found that the jointly recommended custodial sentence of 360 months was fair, reflected the seriousness of the offense, promoted respect of the law, and would not promote unwarranted sentencing disparities pursuant to the factors set forth in § 3553(a). *Id*. at 14–16.

The Court has considered Defendant's arguments and evidence of his positive progress during his incarceration, including his participation in BOP programs that

promote rehabilitation and lack of disciplinary infractions within the past four years. (*See, e.g.*, ECF No. 2663-1 at 19.) The Court finds that Defendant's commendable progress while incarcerated is not sufficient to alter the Court's determination at sentencing that 360 months of custody is a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a). Defendant points to two other leaders within the same criminal organization who are "already free or soon will be." (ECF No. 2683 at 3 n.6.) However, these individuals presented materially different circumstances than are present here and thus are not similarly situated to Defendant: one individual had his sentence reduced pursuant to a *Government* motion, and the other was charged with and sentenced pursuant to statutes that had a significantly lower statutory maximum than the statutes to which Defendant here pled guilty. *See U.S. v. Escamilla*, S.D. Cal. Case No. 3:10-cr-3044-WQH-6; *U.S. v. Arellano-Felix*, S.D. Cal. Case No. 3:97-cr-2520-RSH-2. Based upon the record, the Court finds that the need for the sentence "to protect the public from further crimes of the defendant," "to reflect the seriousness of the offense," "to provide just punishment for the offense," and "to avoid unwarranted sentencing disparities among similarly situated defendants" continues to support the sentence imposed. 18 U.S.C. § 3553(a).

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Expand the Record is granted (ECF No. 2668).

IT IS FURTHER ORDERED that the Motion for Modification of Term of Imprisonment is denied (ECF No. 2663).

Dated: October 17, 2025

Hon. William Q. Hayes
United States District Court